UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| DOREIN P., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-cv-00158-TWP-DML |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Dorein P.[2] requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. For the following reasons, the Court **remands** the decision of the Commissioner.

**I.    PROCEDURAL BACKGROUND**

On February 22, 2017, Dorein P. filed an application for DIB, alleging a disability onset date of February 1, 2017. (Filing No. 13-2 at 26.) On March 21, 2017, he also filed an application for SSI. (Filing No. 13-5 at 9.) His applications were initially denied on June 28, 2017, (Filing No. 13-4 at 15; Filing No. 13-4 at 19), and upon reconsideration on November 3, 2017, (Filing No. 13-4 at 25; Filing No. 13-4 at 28). Administrative Law Judge Renita K. Bivens, (the "ALJ")

---

[1] After the removal of Andrew M. Saul as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

[2] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

conducted a hearing on June 4, 2019, at which Dorein P., represented by counsel, and a vocational expert ("VE") appeared and testified. (Filing No. 13-2 at 77-116.) The ALJ conducted a supplemental hearing on October 9, 2019, at which Dorein P.'s counsel was able to cross-examine the VE concerning objections to his prior testimony. (Filing No. 13-2 at 57-74.) The ALJ issued a decision on November 20, 2019, concluding that Dorein P. was not entitled to receive benefits. (Filing No. 13-2 at 23-46.) The Appeals Council denied review on June 22, 2020. (Filing No. 13-2 at 2.) On July 10, 2020, Dorein P. timely filed this civil action, asking the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to review the final decision of the Commissioner denying him benefits. (Filing No. 1.)

## II. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At step two, if the

claimant does not have a "severe" impairment that also meets the durational requirement, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)[3]; Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184). At step four, if the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy. *Id*.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the

---

[3] The Code of Federal Regulations contains separate, parallel sections concerning DIB and SSI, which are identical in most respects. Cases may reference the section pertaining to only one type of benefit. *See Craft*, 539 F.3d at 676 (citing 20 C.F.R. § 404.1545(a)(1)). Generally, a verbatim section exists establishing the same legal point with both types of benefits. *See, e.g.*, 20 C.F.R. § 416.945(a)(1). The Court will detail any applicable substantive differences but will not always reference the parallel section.

Case 4:20-cv-00158-TWP-DML   Document 19   Filed 03/17/22   Page 4 of 12 PageID #: 873

claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. For the purpose of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id*. (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

4

### III.   FACTUAL BACKGROUND

When Dorein P. filed his DIB and SSI applications, he alleged that he could no longer work because of paranoid schizophrenia, manic depressive disorder, anxiety, and memory loss. ([Filing No. 13-6 at 6](#).) He was 37 years old when his alleged disability began. (*See* [Filing No. 13-5 at 2](#).) Dorein P. had earned an associate degree in web design and information technology. ([Filing No. 13-6 at 7](#).) He had worked as a car salesperson, cashier, cook, and machinist. ([Filing No. 13-6 at 7](#).) The relevant evidence of record is amply set forth in the parties' briefs, as well as in the ALJ's decision and need not be repeated here. Below are the facts relevant to the Court's disposition of this case.

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Dorein P. was not disabled. ([Filing No. 13-2 at 45-46](#).) At step one, the ALJ found that Dorein P. had not engaged in substantial gainful activity[4] since February 1, 2017, the alleged onset date. ([Filing No. 13-2 at 28](#).) At step two, the ALJ found that Dorein P. had "the following severe impairments: anxiety and obsessive-compulsive disorder, mild degenerative facet arthropathy, and degenerative lumbar disc." ([Filing No. 13-2 at 28](#) (citations omitted).) At step three, the ALJ found that Dorein P. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. ([Filing No. 13-2 at 29](#).) After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except [he is] able to lift and carry up to 50 pounds occasionally and 25 pounds frequently; able to stand and/or walk for 6 hours per 8-hour day and sit for 6 hours per 8-hour day with normal breaks. The claimant can occasionally climb ladders, ropes, and scaffolds. He can understand, remember,

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

and carry out simple instructions. He can maintain attention, concentration and sustain persistence and pace to make judgments commensurate with functions of simple, repetitive task. The claimant is able to respond appropriately to brief interaction with the public, coworkers, and supervisor, meaning for a short duration for specific purpose with no prolonged intense social interaction. He can adapt to routine changes in the work setting.

(Filing No. 13-2 at 31.) At step four, the ALJ found, considering the VE's testimony and Dorein P.'s RFC, that he could perform his past relevant work as a store laborer. (Filing No. 13-2 at 42-43.) At step five, the ALJ found in the alternative, considering the VE's testimony and Dorein P.'s age, education, work experience, and RFC, that he could perform other work with jobs existing in significant numbers in the national economy in representative occupations such as counter supply worker, salvage laborer, and kitchen helper. (Filing No. 13-2 at 43-45.)

## IV. DISCUSSION

Dorein P. makes at least six assertions, that: (1) the ALJ erred by failing to find bipolar II disorder with depression a severe impairment at step two, (Filing No. 15 at 7-8); (2) the ALJ erred by failing to assign weight to two consultative psychological examinations and the examiner's medical opinion, (Filing No. 15 at 9-10); (3) the ALJ failed to account for his moderate limitations in concentration, persistence, or pace in his RFC, (Filing No. 15 at 10-11); (4) the ALJ improperly weighed the medical opinions, (Filing No. 15 at 11-15); (5) the ALJ improperly evaluated his subjective symptoms, (Filing No. 15 at 15-17); and (6) the ALJ failed to communicate his full RFC limitations to the VE, (Filing No. 15 at 18). The Court will address the arguments as necessary to resolve the appeal, beginning with an issue that is dispositive.

### A. Consultative Psychological Examiner's Opinion

"[E]vidence that comes in the form of a medical opinion" must be addressed by the ALJ. *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your

impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). According to the regulation applicable at the time that Dorein P. filed his DIB application,[5] the SSA assures that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c) (for claims filed before March 17, 2017).

Dorein P. contends that the ALJ erred in not discussing how much weight she gave to the opinion of a consultative psychological examiner, Robert J. Kurzhals, Ph.D. ("Dr. Kurzhals"), including his assessment that Dorein P. had moderate to marked limitations relating to coworkers and supervisors. (Filing No. 15 at 9.) On November 2, 2017, at the request of the Disability Determination Bureau, Dr. Kurzhals examined Dorein P. to evaluate his disability claims. (Filing No. 13-7 at 57.) Dorein P. reported that he had not had mental health treatment since he was in prison in approximately 2004 when he was treated for bipolar depression. (Filing No. 13-7 at 58.) He came to the evaluation along with his wife and indicated that they had been separated but had gotten back together in the past year because he agreed to pursue mental health treatment. (Filing No. 13-7 at 58.) Dorein P. reported that bipolar disorder limited his ability to work because he had a "hard time dealing with people and if they even sa[id] the slightest derogatory comment" he got "agitated." (Filing No. 13-7 at 57.) Dr. Kurzhals summarized his observations during the examination including that Dorein P. came "across as hypersensitive and tend[ed] to overreact to

---

[5] The ALJ determined that Dorein P. filed his SSI application after March 17, 2017. However, the Court notes that for protective filing purposes, Dorein P.'s DIB application indicated that he intended to file for SSI when he filed for DIB. (See Filing No. 13-5 at 2.) Regardless, Dorein P. cites the older regulatory scheme for evaluating medical opinions as the applicable authority in this case, (see, e.g., Filing No. 15 at 9), and the Commissioner has not raised any distinction based on the new regulatory scheme or applicable to one claim for benefits versus the other. The older regulatory scheme including the definition of a medical opinion certainly applies to Dorein P.'s DIB claim. For simplicity's sake, and without the benefit of adversarial discourse on the issue, the Court will limit discussion to the older regulatory scheme. However, the Court's election to do so should not be interpreted on remand as establishing the law of the case about the proper filing date of the SSI claim or foreclose the SSA from raising any distinction between the claims based on a proper application of the SSA's controlling authority.

7

real or perceived slights. He also described a history of low frustration tolerance and poor coping skills, as he tends to punch his leg when upset, but he apparently does not engage in any other non-suicidal self-injury." (Filing No. 13-7 at 61.) Dr. Kurzhals's assessment included that Dorein P.'s "ability to relate to coworkers, supervisors and the public is estimated to be moderately to markedly impaired, due to depression, anxiety, low frustration tolerance, and maladaptive personality traits." (Filing No. 13-7 at 62.)

Dorein P. contends that Dr. Kurzhals's opinion is consistent with the supportive statement of his treating psychiatric mental health nurse practitioner, Jamie Becker, PMHNP-BC ("Nurse Practitioner Becker"). (Filing No. 15 at 9.) On May 22, 2019, Nurse Practitioner Becker assessed, in part, that Dorein P. had a "marked loss" with his abilities "to accept instructions and respond appropriately to criticism from supervisors" and "to get along with co[]workers or peers without (unduly) distracting them or exhibiting behavioral variances." (Filing No. 13-7 at 81.) SSR 85-15 (S.S.A. Jan. 1, 1985), 1985 WL 56857, at *4 explains:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) . . . to respond appropriately to supervision, coworkers, and usual work situations . . . . A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

To allow meaningful judicial review, the ALJ must explain how dispositive issues have been resolved. *See, e.g.*, *Scott v. Barnhart*, 297 F.3d 589, 596 (7th Cir. 2002).

The ALJ cited Dr. Kurzhals's report only for Dorein P.'s educational history. (Filing No. 13-2 at 30.) The Seventh Circuit has also explained that "[a]s a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence. Not even the claimant's treating physician, who presumably is the

8

expert most familiar with the claimant's condition, is given such complete deference." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (citing *Hofslien v. Barnhart,* 439 F.3d 375, 376-77 (7th Cir. 2006); 20 C.F.R. § 404.1527(c)(2) (additional citations omitted)).  "But rejecting or discounting the opinion of the agency's own examining physician [suggesting] that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley*, 758 F.3d at 839 (citing *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice.") (additional citations omitted)).  The ALJ did not weigh Dr. Kurzhals's medical opinion.  Accordingly, the ALJ erred.

The Commissioner did not expressly respond to Dorein P.'s relevant assertion of error.  However, the Commissioner contends that the ALJ's mental RFC assessment mirrored the assessment of the psychological reviewing consultant, Ken Lovko, Ph.D. ("Dr. Lovko"), who expressly considered both consultative examinations that were completed by Dr. Kurzhals, (Filing No. 16 at 9), the ALJ properly gave Dr. Lovko's assessment considerable weight, the ALJ's RFC assessment was supported by substantial evidence, (Filing No. 16 at 10), and the ALJ properly gave little weight to Nurse Practitioner Becker's assessment, (Filing No. 16 at 12).

The Commissioner's contentions imply harmless error consideration even though that argument was not expressly raised.  Reviewing courts may find an administrative error to be harmless based on the evidence in the record, considered prospectively rather than retrospectively, "if we can predict with great confidence what the result on remand will be." *McKinzey*, 641 F.3d at 892.  In *McKinzey*, the court concluded that the ALJ's failure to address two reviewing consultants' opinion was harmless because their assessments directly conflicted with a relevant

9

treating specialist's assessment that had been credited by the ALJ. *Id*. (decided in the context of the older regulatory scheme, applicable to Dorein P.'s DIB claim, that gives more deference to treating and examining opinions). However, here, the ALJ failed to confront an examining opinion that is contradicted only by a reviewing opinion, and the examining opinion is supported by a later treating assessment.

Dorein P. also contends that the ALJ failed to apply the appropriate amount of "rigor" to Dr. Lovko's assessment in contrast to Dr. Kurzhals's examining opinion and Nurse Practitioner Becker's treating assessment. (Filing No. 15 at 11.) Dorein P. further contends that Dr. Lovko gave his assessment before and without the benefit of having reviewed any of Dorein P.'s mental health treatment including his diagnosis of bipolar II disorder with depression. (Filing No. 15 at 12.) The Seventh Circuit has explained that "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment") (additional citation omitted)). On November 3, 2017, Dr. Lovko expressly considered that Dorein P. had "not sought out any mental health treatment in at least a decade, and specifically not even since [the] last [consultative examiner's] assessment" [by Dr. Kurzhals]. (Filing No. 13-3 at 53.) Shortly after Dr. Lovko's review, in December 2017, Dorein P. started receiving mental health treatment and was diagnosed with bipolar II disorder, depressed type, with anxious distress, moderate, based in part on his "irritable" mood disturbance, poor insight and judgment, and visible, severe irritation when discussing the

recent state psychiatric examination and his impression that the examiner had been "condescending toward him." (Filing No. 13-7 at 176.)

The ALJ discussed Dorein P.'s subsequent mental health treatment in some detail including his bipolar disorder diagnosis. (*See, e.g.*, Filing No. 13-2 at 37.) The ALJ concluded that he had shown improvement with treatment, including with his anger outbursts. *Id*. On the one hand, the ALJ's conclusion does appear supported by substantial evidence. Initially in February 2018, Dorein P. reported occasionally yelling at his wife to make a point, as well as avoidance of others based on his worries about upsetting people. (Filing No. 13-8 at 88.) In March 2018, he reported that he isolated himself when his wife was condescending. (Filing No. 13-8 at 15.) In May 2018, he reported that he was no longer raising his voice to her. (Filing No. 13-8 at 98.) In 2019, he was making "good" progress towards his goals. (Filing No. 13-8 at 75.) On the other hand, in December 2018, he was still observed to be "irritable" during a mental status examination, and his "worries" about others continued to intrude on his thought content. (Filing No. 13-8 at 55-56.)

In *Moreno*, the court explained that "[w]e cannot accept the agency's argument that the newer mental-health records would not have made a difference because they showed improvement. This argument is based on the ALJ's own assessment of the more recent records. That assessment was not justified under the circumstances of this case." 882 F.3d at 729 (citations omitted). "It is an ALJ's responsibility to recognize the need for further medical evaluations of a claimant's conditions before making RFC and disability determinations . . . ." *Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012) (citations omitted)). The Court finds that harmless error is not appropriate here because of Dr. Lovko's express reliance on the lack of treatment, the later treating support of Nurse Practitioner Becker, and the fact that all of Dorein P.'s mental health treatment records

11

during the period at issue were not submitted to expert review. Accordingly, remand is necessary for consideration of Dr. Kurzhals's opinion, as well as further consideration of Dorein P.'s RFC.

**B.     Other Arguments**

The Court declines to analyze Dorein P.'s remaining arguments. All relevant opinions that were weighed by the ALJ should be reconsidered along with the complete updated record. Any remaining arguments are moot in light of the Court's instructions to reconsider Dorein P.'s RFC.

**V.     CONCLUSION**

For the reasons stated above, the final decision of the Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 3/17/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

James Roy Williams
YOUNG REVERMAN AND MAZZEI CO., LPA
jwilliams@yrmlaw.com

Catherine Seagle
SOCIAL SECURITY ADMINISTRATION
catherine.seagle@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov